OTIS H. WEED *vs.* BOSTON & SALEM ICE COMPANY.

B. agreed that he would sell to A. all the ice in B.'s ice-house for a certain sum, a part of which was to be paid in cash and the residue with interest by instalments at six and nine months, with liberty to A. to remove any of the ice before making the last payment, upon paying a certain sum per ton; " the whole of the ice to remain the property of said B. until it shall have been removed from the ice-house and sold." If A. should neglect to pay the instalments for ten days after they became due, B. should have the right to treat the agreement as null and void, or might sell the ice remaining on hand at such price as he should think best, and A. should pay to B. the balance, if any, between the price agreed upon and the price realized. A. agreed to have all the ice removed within a specified time, and that he would pay all expense of insuring the ice after three months, until the full consideration should have been paid. Before the expiration of three months, the ice was destroyed by fire. *Held*, that the property in the ice remained in B., and that A might maintain an action against him upon the agreement.

CONTRACT. The following facts were agreed in the superior court:

On the 8th of December 1864 the parties entered into a written agreement, the material parts of which were as follows: " The said company agree that they will sell said Weed all the ice, more or less, now in the eight ice-houses owned by them at Lynnfield, and found by measurement this day to contain ten thousand six hundred and seventy-five tons, for the sum of eight

thousand and six dollars and $\frac{25}{100}$ to be paid for as follows: **two thousand dollars** on execution hereof, and two thousand dollars and interest in six months, and the balance with interest in nine months from date thereof. Provided, however, if the said Weed shall desire to sell and remove any of said ice before the last payment he may do so upon the payment to said company of the sum of seventy-five cents for each and every ton, until the whole amount of the agreed sum shall have been paid. The whole of the ice to remain the property of the company until it shall have been removed from the ice-house and sold; and if the said Weed shall fail or neglect to pay the instalments as above, and for the ice removed and sold, as soon as he shall have delivered the same, then his right to remove any ice from the houses shall cease till he shall have first paid for all delivered, and all sums due under this agreement. And if said Weed shall omit or neglect to make the payments due under this agreement for the period of ten days after the same shall have become due and payable, then and in that event the said company shall have the right to treat this agreement as null and void, or they may sell the ice remaining on hand at such price as they may think best, and the said Weed shall pay to said company the balance, if any, between the price agreed upon herein, and what they shall realize from such sales." " And it is further agreed that if said Weed desires to fill up the empty spaces now in said ice-houses during the winter, he may do so from the adjacent pond, using the tools of said company without charge." " And said Weed agrees to have all the ice removed from said five old ice-houses on or before the fifteenth of September next, and from all the others on or before the —— day of November next; that he will pay all expense of insuring the ice now in the houses after three months, until the full consideration shall have been paid."

The plaintiff paid to the defendants the sum of two thousand dollars at the time of the execution of the contract. In January 1865 the houses in which the ice was stored were, with the ice, destroyed by fire. The plaintiff, at the time the second instalment became due, offered to pay the same if it was necessary to

keep good his rights under the agreement. The defendants, being in doubt how any payment might affect their rights, declined for the time to accept it. After the execution of the agreement, the plaintiff filled up the empty spaces in three of the houses, with ice cut from the adjacent pond.

It was agreed that if the plaintiff is entitled to maintain his action, either for the sum paid by him to the defendants, or for damages for any breach of the contract, judgment should be rendered for him, for $2000 and interest; otherwise, for the defendants.

Judgment was rendered for the plaintiff accordingly, and the defendants appealed to this court.

*N. Morse,* for the defendants, cited *Rider* v. *Ocean Ins. Co.* 20 Pick. 259; *Riddle* v. *Varnum,* Ib. 280; *Olyphant* v. *Baker* 5 Denio, 379; *Norcross* v. *Insurance Companies,* 17 Penn. State R. 429; *Pearce* v. *Norton,* 10 Maine, 252.

*R. M. Morse, Jr.,* for the plaintiff, cited, as to the title to the ice, *Thompson* v. *Gould,* 20 Pick. 139; *Deshon* v. *Bigelow,* 8 Gray, 160; *Coggill* v. *Hartford & New Haven Railroad,* 3 Gray, 547; *Young* v. *Austin,* 6 Pick. 280, 284.

HOAR, J. By the just construction of the contract of the parties, we have no doubt that the plaintiff is entitled to recover the instalment of the purchase money which he had paid before the destruction of the property purchased.

The agreement is that the defendants " will sell " for a sum to be paid in the manner stipulated. This imports an executory contract, though the expression used would not be of great importance, if it appeared from other parts of the instrument that the property was to pass. But it is expressly stated afterward that " the whole of the ice is to remain the property of said company until it shall have been removed from the ice-house and sold." There was then no completed sale, and no property vested in the plaintiff, when, by the destruction of the ice, the further execution of the contract became impracticable.

Another clause of the instrument is very significant, and shows that the parties not only understood that the property remained in the vendors, but that it was to be at their risk, and

to be kept insured by them.- The plaintiff agrees " that he wil. pay all expense of insuring the ice now in the houses, after three months, until the full consideration shall have been paid." There is no agreement by the plaintiff to insure, either during the three months or afterward; but he is to pay " the expense of insuring." This certainly implies that the defendants were to keep the property insured, after the three months; and we think it contains some implication that it was to be kept insured at their expense during those months. There was no delivery to the plaintiff of the ice. He was at liberty to put more ice into the ice-houses, but not to remove any from them without making a further payment of seventy-five cents a ton, in addition to the stipulated instalments of the purchase money, until the whole was paid for. There was no lease of the ice-houses, and no possession of the ice by the plaintiff, actual or constructive; only the permission to remove it upon certain terms and conditions.

The case is distinguished from *Rider* v. *Ocean Ins. Co.* 20 Pick. 259. In that case the vendors, though retaining the right of property, had delivered the vessel to the vendee, who had also agreed to keep her insured; and it was held that the vendee who had paid an instalment of the purchase money, and given promissory notes for the remainder, and had possession, had an insurable interest. Nothing then remained to be done by the vendors, and they had received the entire consideration for the sale. The destruction of the vessel would not therefore discharge the vendee, or enable him to recover back the purchase money paid. Here the property, possession and risk remained with the vendor; and when the ice was destroyed, the contract was no longer capable of performance. The consideration on which the plaintiff paid his money failed, and he is entitled to recover it back.

*Judgment for the plaintiff on the facts agreed.*